## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
**RAYMOND McCOY,**                        )
                                          )
              **Petitioner,**             )
       **v.**                             )
                                          )          **Civil No. 14-cv-923 (RBW)**
**WARDEN THOMAS,**                        )
**U.S.P. LEWISBURG,**                     )
                                          )
              **Respondent.**             )
_____)

## GOVERNMENT'S RESPONSE TO PETITIONER'S <u>PRO SE</u> PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes petitioner's <u>pro se</u> "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody." The petition should be summarily denied because all of petitioner's claims are meritless.

## I.      <u>Factual and Procedural History</u>

On March 16, 2005, petitioner Raymond McCoy was charged by indictment with first-degree murder while armed (premeditated), in violation of D.C. Code §§ 22-2101, -4502; possession of a firearm during a crime of violence, in violation of D.C. Code § 22-4504(b); and carrying a pistol without a license, in violation of D.C. Code § 22-4505(a), in connection with the October 28, 2004 shooting death of Imtiaz Mohammed. The trial evidence showed that petitioner shot and killed Mohammed with a .45-caliber pistol as Mohammed sat in the driver's seat of a car parked on the 800 block of Rittenhouse Street, N.W. <u>See</u> Petitioner's Memorandum of Law in Support of Motion Pursuant to 28 U.S.C. § 2254 (hereinafter "Pet.'s Mem."), Ex. A, <u>McCoy v. United States</u>, No. 08-CF-1360 (D.C. July 21, 2011) (hereinafter "Mem. Op."). This

fact is uncontroverted; during a jury trial before the Honorable Rufus R. King, Chief Judge, in

the Superior Court for the District of Columbia, petitioner testified that he shot and killed

Mohammed but claimed that he acted in self-defense.

A medical examiner testified that Mohammed was shot five times:  once in the left

temple, once in the neck, twice in the chest, and once in the ribs.  Mem. Op. at 1.  At least three

of the shots were fired from approximately one foot away.  Id.  The medical examiner "surmised

that the gun was positioned downward from above the left side of Mohammed as the rounds

were discharged into his body."  Id. at 1-2.  Later, as emergency responders pulled Mohammed's

body from the car, a .38-caliber gun fell from his waistband.  Id. at 2.

Two bystanders saw the shooting, Harry Dishman and Kellie Hudson.  Mr. Dishman,

who lived in the neighborhood, recalled hearing petitioner arguing with Mohammed

approximately a week before the shooting.  Mem. Op. at 2.  On the day of the shooting itself, Mr.

Dishman heard two gunshots while he was walking on Rittenhouse Street, N.W.  He then saw

petitioner, who was carrying a gun in his hand, running toward a black Acura sedan.  Id.  Ms.

Hudson testified that she was sitting in her car, which was parked on Rittenhouse Street, N.W.,

when she first heard shots fired.  She looked up to see petitioner, who she recognized from the

neighborhood, firing a second shot at the victim; petitioner was standing next to the open driver's

side door of Mohammed's car while he fired.  Mohammed was not making any hand gestures at

the time.  Id.

Petitioner testified that he acted in self-defense and claimed that Mohammed had

threatened to kill him over an outstanding drug debt.  Petitioner also claimed that Mohammed

placed his hand under his shirt in a threatening manner before petitioner shot at him.  Mem. Op.

at 2.  After testifying that the interaction with Mohammed lasted "a few seconds" (May 7, 2008

Tr. at 352:22), Petitioner admitted that he "didn't get shot" during the encounter (id. at 391:21),

and that Mohammed "did not pull a gun" before petitioner began shooting (id. at 392:3).

Petitioner also admitted that he repeatedly lied to police about Mohammed's death, telling them

that he "didn't know anything about it" (id. at 358:23; see also id. at 379:2-24).  Petitioner also

claimed that Mohammed was violent, that Mohammed had been "the main suspect in the murder

of his own brother" (id. at 354:22), and that "he was locked up for shooting someone over a

basketball game" (id. at 354:23-24).  Petitioner further testified that Mohammed frequently

carried a gun, including on one occasion where petitioner had seen him pull "a gun out and he

was shooting in the air like warning shots" (id. at 355:10).

On May 13, 2008, a jury found petitioner guilty of all charges.  On September 12, 2008,

Judge King sentenced petitioner to an aggregate 35-year term of incarceration, followed by five

years of supervised release.  Petitioner timely noted an appeal on October 9, 2008.  The District

of Columbia Court of Appeals affirmed petitioner's conviction on July 27, 2011.

On March 8, 2012, petitioner filed both a motion to recall the mandate, pursuant to D.C.

App. R. 41(f), and a petition for certiorari in the Supreme Court of the United States.  In his

motion to recall the mandate, petitioner alleged that his appellate counsel—Michelle L. Morin,

Elliot Schulder, and Peter A. Swanson of Covington & Burling LLP—were ineffective for

failing to file a D.C. Code § 23-110 motion on the basis of alleged ineffective assistance of trial

counsel—Christopher McKee, Amit Mehta, and Christopher Roberts of the District of Columbia

Public Defender Service.  Specifically, petitioner alleged in his motion that trial counsel had

been ineffective for failing to:  (1) object to improper statements made by the prosecutor during

closing argument and rebuttal, and failing to move for a mistrial on the basis of those statements;

(2) properly cross examine Kellie Hudson; and (3) call Nicole Jones, Mohammed's girlfriend, as

a witness for the defense.  See Pet.'s Mem., Ex. J, Motion to Recall the Mandate.  The Supreme

Court denied certiorari on October 12, 2012.  On September 9, 2013, after ordering the

government to respond to the merits of petitioner's Rule 41 motion, the Court of Appeals denied

the motion, holding that all of the decisions made by trial counsel were strategic choices and did

not rise to the level of constitutionally ineffective assistance.  See Pet.'s Mem., Ex. D, Order

Denying Motion to Recall the Mandate (hereinafter "Sept. 9, 2013 Order").  Petitioner did not

file a motion to set aside, vacate, or correct his sentence under D.C. Code § 23-110 during the

pendency of his direct appeal or at any time thereafter.

In petitioner's Section 2254 Petition for Writ of Habeas Corpus, he asserts that both his

appellate and trial counsel were ineffective.  Specifically, he claims that he advised his appellate

counsel that he wished to file a Section 23-110 motion in the Superior Court of the District of

Columbia on the basis of his trial counsel's ineffective assistance.  Pet.'s Mem. at 4-5.

According to petitioner, his appellate counsel did not file a Section 23-110 motion and instead

raised claims of ineffective assistance for the first time during petitioner's direct appeal.  With

respect to his trial counsel, petitioner asserts that his counsel was ineffective for the same reasons

alleged in his Rule 41 motion.  In addition, petitioner asserts, for the first time in his habeas

petition, that his trial counsel was ineffective for the additional reason that counsel failed to

properly advise petitioner of a pretrial plea offer to voluntary manslaughter under which

petitioner would have served 15 years of incarceration, which was significantly less than the

aggregate sentence of 35 years that he received after he was found guilty by a jury.

## II.     DISCUSSION

### A.      Ineffective Assistance of Trial Counsel[1]

Every one of petitioner's ineffective assistance of counsel claims lacks merit; petitioner's

motion is simply an attempt to adjudicate issues that have already been decided against him.  As

the Court of Appeals determined in ruling on petitioner's Rule 41 motion, he cannot make the

required showing of prejudice to establish ineffective assistance. [2]

To succeed on an ineffective assistance of counsel claim, petitioner must satisfy the two

---

[1] In the usual case, a District of Columbia prisoner cannot raise a claim of ineffective assistance of trial counsel in a Section 2254 motion.  D.C. Code § 23-110 provides that a prisoner serving a Superior Court sentence may move to vacate, set aside, or correct a sentence "imposed in violation of the Constitution or the laws of the District of Columbia."  D.C. Code § 23-110(a).  This remedy is available only in the Superior Court; "Section 23-110(g)'s plain language makes clear that it divests federal courts of jurisdiction to hear habeas petitions by prisoners who could have raised viable claims pursuant to section 23-110(a)."  Williams v. Martinez, 586 F.3d 995, 998 (D.C. Cir. 2009).  Thus, under Section 23-110(g), no court is permitted to entertain an application for writ of habeas corpus if the prisoner was denied relief or failed to seek relief under Section 23-110, unless the remedy under that statute is inadequate or ineffective.  See, e.g., Swain v. Pressley, 430 U.S. 372, 377 (1977).

Relief is "inadequate or ineffective" if it resulted in a "decision that was contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  Gorbey v. United States, No. 13-2019, 2014 U.S. Dist. LEXIS 96943, at *3 (D.D.C. Jul. 17, 2014).  Section 23-110 has been recognized as inadequate and ineffective in only a few limited circumstances.  Cf. Williams, 586 F.3d at 998 (recognizing that Section 23-110(g) does not bar a claim of ineffective assistance of appellate counsel); Blair-Bey v. Quick, 151 F.3d 1036, 1042 (D.C. Cir. 1998) (recognizing that a federal court is not divested of jurisdiction over a habeas petition that raises a challenge to a parole decision because such a claim challenges the legality of executive action and not the legality of a sentence).  However, Section 23-110 is not considered inadequate or ineffective simply because the requested relief has been denied.  See Garris v. Lindsay, 794 F.3d 722, 727 (D.C. Cir. 1986).

The government does not agree with petitioner's argument that this Court has jurisdiction under the principles articulated in Martinez v. Ryan, 132 S. Ct. 1309 (2012) and Trevino v. Thaler, 133 S. Ct. 1911 (2013), to address claims for which there is an adequate remedy under D.C. Code § 23-110.  Here, moreover, petitioner litigated his ineffective assistance of appellate counsel claim, premised on appellate counsel's failure to file a Section 23-110 motion challenging the performance of trial counsel, and his D.C. App. R. 41 motion to recall the mandate was denied on the merits.  Indeed, the D.C. Court of Appeals concluded that "many of the issues raised in appellant's motion fall within the purview of tactical decisions and, without a showing of prejudice that we find has not been established in this case, do not provide a basis for establishing ineffective assistance of trial counsel."  (Sept. 9, 2013 Order).  The Court of Appeals' conclusion that petitioner failed to demonstrate that trial counsel's tactics resulted in prejudice not only counsels against petitioner's jurisdictional argument, but it also compels denial of his instant claims on the merits.

[2] As a result of this precedent, there is very little law in this District regarding ineffective assistance of counsel claims raised in a Section 2254 motion.  Therefore, the government has cited to law analyzing such claims in the context of a Section 2255 motion in this District and cases analyzing Section 2254 and 2255 motions in other Districts.

part test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 690 (1984).  First, petitioner must

show that, in light of all of the circumstances as they appeared at the time of the conduct,

"counsel's representation fell below an objective standard of reasonableness," <u>i.e.</u>, below

"prevailing professional norms." <u>Strickland</u>, 466 U.S. at 690.  In assessing reasonableness, the

court "must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." <u>Id.</u> at 689.  Second, petitioner must show that counsel's

ineffective assistance resulted in prejudice sufficient to create a "reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u>

at 694.  This requires the petitioner to show that counsel's errors were so grave "as to deprive the

defendant of a fair trial." <u>Id.</u> at 687.  A showing of sufficient prejudice requires more than a

conclusory allegation "that the errors had some conceivable effect on the outcome of the

proceedings." <u>Id.</u> at 693.  Establishing prejudice "requires a 'substantial,' not just 'conceivable,'

likelihood of a different result." <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1403 (2011).  A court

need not consider both <u>Strickland</u> prongs when a showing on either prong is sufficient.

<u>Strickland</u>, 466 U.S. at 697.  Under this standard, all of petitioner's claims fail because he cannot

show that counsel's performance was objectively unreasonable, that he was prejudiced, or both.

### 1.   Failure to Object to Closing Argument and Rebuttal

Petitioner first argues that his trial counsel was ineffective for failing to request corrective

action after the prosecutor made improper statements and introduced a new theory of the case

during closing argument and rebuttal, either through making objections or moving for a mistrial.[3]

At trial, petitioner was principally represented by Christopher McKee.  During rebuttal, the

prosecutor introduced, purportedly for the first time, a theory that petitioner first shot

---

[3] This portion of petitioner's motion seems to have been copied and pasted from his appellate brief before the
District of Columbia Court of Appeals, prepared by the very appellate counsel petitioner now claims was
constitutionally ineffective.

Mohammed from behind, "'blow[ing] his brains out,' and then fired four remaining shots as he moved around Mohammed from back to front." Pet.'s Mem. at 12. This theory, according to petitioner, is unsupported by the evidence introduced at trial, and thus it was improper for the prosecutor to introduce it during rebuttal, when the defense would no longer be able to counter the argument. Id. Second, petitioner argues that the prosecutor's argument that the victim's head wound was the first wound inflicted amounted to speculation unsupported by the evidence presented at trial. Id. at 13. Third, petitioner argues that the prosecutor improperly stated that the gunshot to the victim's head caused his "brain matter to spill out." Id. Fourth, according to the petitioner, the prosecutor mischaracterized the testimony of government witness Kellie Hudson, as indicating that Ms. Hudson had seen the victim on Rittenhouse Street, N.W. on the day of the shooting. Id. at 14. Fifth, petitioner claims that "during both initial and rebuttal summations, the prosecutor made numerous statements designed to inflame the jury." Id. at 15. Finally, petitioner argues that the prosecutor offered her own opinion about the veracity of petitioner's testimony because petitioner did not tell his mother that he shot Mohammed in self-defense immediately after the shooting. Instead, the prosecutor suggested that petitioner's theory of self-defense arose only after he spoke with counsel about his case. Id. at 15-16. Though counsel objected to some of these statements, he did not move for a mistrial at the close of the government's rebuttal. This, according to petitioner, was not a strategic decision, because moving for a mistrial would have been "a freebie." Id. at 17-18 (quoting United States v. Ramsey, 323 F. Supp. 2d 27, 37 (D.D.C. 2004). Moreover, petitioner asserts, without any justification, that if his counsel had made such a motion, it would have been successful. Id.

      In his direct appeal, petitioner sought reversal of his conviction on the basis of these same arguments, claiming that the prosecutor committed misconduct by making the purportedly

improper remarks during closing argument and rebuttal.  See Mem. Op. at 7.  The District of

Columbia Court of Appeals rejected petitioner's claim of prosecutorial error, held that the

government had not posited a new and unsupported theory of the shooting during its closing

argument, and that the prosecutor's statements did not constitute plain error.  Id. at 7.

Petitioner's claims of ineffective assistance must be evaluated in light of that holding.  See

United States v. Hall, No. 03-cv-1040, 2006 U.S. Dist. LEXIS 27372, at *11-*12 (D.D.C. May

9, 2006) (explaining that an almost identical claim of ineffective assistance arising out of

prosecutorial misconduct—failure to object to improper statements—must be evaluated in light

of a D.C. Circuit opinion that the same statements did not warrant reversal under the plain-error

standard, and holding that the Circuit's ruling "preclude[ed] a finding that the assistance of

[petitioner's] trial counsel was ineffective").

    Despite petitioner's claims to the contrary, the prosecutor's statements were well

supported by the record, and no "new" theory of the case was raised for the first time during the

closing argument or rebuttal.  Petitioner testified that he approached Mohammed's car from

behind (see May 5, 2008 Tr. at 24:13-17; May 7, 2008 Tr. at 351:17-352:10) (establishing that

petitioner was standing at the corner of 8th and Rittenhouse Streets, N.W.; that Mohammed

pulled up to 803 Rittenhouse Street, N.W.; and that petitioner walked over to Mohammed's car

from the east, which would have been from behind)).  Furthermore, it was uncontroverted that

during the shooting, Mohammed was seated in the driver's seat of the car and that he was shot

from above in the left temple (see May 6, 2008 Tr. at 268:24-25; 271:11-25).  The medical

examiner testified that she observed stippling around the victim's head wound, and concluded

that the petitioner's gun was one or two feet away from Mohammed when he received the wound

(id. at 268:2-272:7).  Because the prosecutor's statements were supported by the record, and

because the Court of Appeals found these statements did not amount to plain error, they cannot be the basis of an ineffective assistance of counsel claim.

Similarly, the prosecutor's other comments during closing argument and rebuttal were proper and evidence based.  Whether to object during opposing counsel's summation to the jury is a matter of trial strategy, especially where, as here, the comments were not improper.  Indeed, "'[b]ecause many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct.'" Cunningham v. Wong, 704 F.3d 1143, 1159 (9th Cir. 2013) (quoting United States v. Necoechea, 986 F.2d 1273, 1281 (9th Cir. 1993)); see also Dansby v. Hobbs, 766 F.3d 809, 836 (8th Cir. 2014) ("Whether to object during opposing counsel's summation to the jury is a matter of trial strategy" that is "virtually unchallengeable.") (internal citations and quotation marks omitted); Crowder v. Green, No. 05 CV 2556, 2005 U.S. Dist. LEXIS 24896, at *22-24 (E.D.N.Y. Oct. 20, 2005) (holding that defense counsel's decision not to object to the prosecutor's repeated references to petitioner's nickname, "killer," did not amount to ineffective assistance because "[b]ased on the trial record, defense counsel appeared to have made a strategic choice not to object").  Further, the trial court instructed the jury on how to properly weigh and consider evidence as opposed to attorney argument, see Mem. Op. at 7, and jurors are presumed to follow the court's instructions, see Richardson v. Marsh, 481 U.S. 200, 211 (1987).  Thus, trial counsel's failure to object did not prejudice the defendant or undermine confidence in the outcome of the trial.  See Cheney v. Washington, 614 F.3d 987, 997 (9th Cir. 2010) (holding that where the trial court properly instructed the jury, a failure to object or a delay in objecting to comments in a closing statement did not amount to constitutionally ineffective assistance);

accord United States v. Cabrera, 734 F. Supp. 2d 66, 88 (D.D.C. 2010) (holding that a prosecutor's statements in the context of a lengthy closing argument did not amount to misconduct where the trial court properly instructed the jury that statements and arguments made by lawyers are not evidence).

Specifically, the prosecutor's argument that the shot to Mohammed's temple was petitioner's first shot was supported by evidence that petitioner "approached Mr. Mohammed's vehicle from the rear," Mem. Op. at 7 n.7, and that the shot to the victim's temple was fired from close range (May 6, 2008 Tr. at 268:2-5). Thus, these statements were not improper because they were a fair comment on the evidence. See Ivey v. Catoe, 36 F. App'x 718, 731 (4th Cir. 2002) (holding that remarks that were a fair comment on the evidence were not improper and therefore "trial counsel could not be considered ineffective for failing to object"). The prosecutor's fleeting comment that petitioner "blew [Mohammed's] brains out" was mere rhetorical flourish, and would have been understood as such by a jury. See United States v. Davis, 754 F.3d 1205, 1218 (11th Cir. 2014) (vacated on other grounds) (holding that a prosecutor's statements during a closing argument that exaggerated the evidence, such as a claim that there was blood "all over" a getaway car when there were only a few drops, "were no more than mere rhetorical flourish" and did not amount to misconduct); Obershaw v. Lanman, 453 F.3d 56, 66 (1st Cir. 2006) (holding, in a habeas proceeding, that the prosecutor's statement during summation that a defense claim was "an insult to your intelligence . . . as jurors" could reasonably be seen as a comment based on the evidence where the state court described the comment as a "rhetorical flourish, undoubtedly recognizable to the jury as such") (internal citations and quotation marks omitted). Nor were the prosecutor's statements that the jury should not give petitioner "a pass" or "a license to kill" made to inflame the jury or urge it to

send a message.  Instead, the prosecutor was merely rebutting petitioner's theory that he had

acted in self-defense.  Similarly, the prosecutor's statements regarding whether petitioner was

telling the truth or whether his testimony was credible were not improper expressions of personal

opinion.  Petitioner testified at trial that he initially misled the police and that he did not know

where or from whom he purchased his gun.  Thus the prosecutor was permitted to comment in

this way on his testimony.  See United States v. Lopez, 590 F.3d 1238, 1257 (11th Cir. 2009),

cert. denied, 131 S. Ct. 413 (2010) (holding that the prosecutor's statements during closing that

the defendant had not accepted responsibility did not amount to misconduct).

 Petitioner has not shown that any of the prosecutor's statements were improper, nor could

he make such a showing now, in light of the Court of Appeals' ruling.  There is a "natural

analogy between the assertion of 'plain error' and the assertion of ineffective assistance of

counsel," and "the Strickland formulation of 'prejudice' comes quite close to what [is] required

in plain-error cases."  United States v. Saro, 24 F.2d 283, 287 (D.C. Cir. 1994).  Because the

statements were not improper, trial counsel was not ineffective for deciding not to object or

move for a mistrial on that basis and petitioner suffered no prejudice.  Petitioner's argument is

"vague and conclusory, and thus insufficient to even raise the issue 'let alone establish'

ineffective assistance of counsel."  United States v. Knight, 975 F. Supp. 2d 119, 127 (D.D.C.

2013) (quoting United States v. Green, 680 F.2d 183, 190 n.12 (D.C. Cir. 1982)).  Petitioner has

offered no support for his argument that a motion for a mistrial would have been a "freebie."

Pet.'s Mem. at 18.  Indeed, as the discussion above makes abundantly clear, a motion for a

mistrial would have been the exact opposite of a "freebie," an unnecessary motion that would

have been properly denied by the trial court.  See, e.g. United States v. Reaves, 586 F.3d 20, 26

(D.C. Cir. 2009) (finding, in an obstruction of justice case, that counsel was not ineffective for

failing to inform the district court that petitioner had not been under court order to appear at an

arraignment where petitioner had been a fugitive for almost one year, because "it would have

been futile to argue [petitioner] lacked the subjective intent to obstruct just based on the lack of a

court order"); United States v. Sutton, 803 F. Supp. 2d 1, 6-7 (D.D.C. 2011) (holding that trial

counsel was not ineffective for failing to ask the Court to consider a certain sentencing range

where petitioner did not qualify for the "Safety Valve" provision of the Sentencing Guidelines,

as doing so would have been a "futile endeavor").

Accordingly, petitioner cannot show that he suffered any prejudice, substantial or

otherwise, from counsel's failure to object or move for a mistrial on the basis of the prosecutor's

statements during closing argument and rebuttal, and his claim should be summarily denied. See

Cullen, 131 S. Ct. at 1408.

### 2. Failure to Properly Impeach

Petitioner also argues that his trial counsel was ineffective because he failed to properly

impeach government witness Kellie Hudson. Pet.'s Mem. at 23. Ms. Hudson testified that she

had pulled over in her car on the corner of Eighth and Rittenhouse Streets, N.W., when she heard

a gunshot. She looked up and saw petitioner "fire a second shot into a burgundy car." Id.

During discovery, trial counsel learned that the prosecutor wrote a law school recommendation

letter for Ms. Hudson, and that the government had provided her with  housing assistance.

According to petitioner, "[t]he context of the letter showed a personal interest by the prosecution

above and beyond the generalized association normally witnessed," such that "Hudson could

have been motivated to testify falsely against Petitioner in order to curry favor with the

government." Id. at 24. Petitioner thus argues that his attorney was constitutionally ineffective

for failing to impeach Hudson regarding the recommendation letter and financial assistance. Id.

at 25.  According to petitioner, if his counsel had properly impeached Ms. Hudson, it would have

discredited her testimony, especially because she had made inconsistent statements in the past.

Id. at 26-27.

"The degree and extent of cross-examination is peculiarly a matter of trial strategy by

defense counsel."  United States v. Simmons, 951 F. Supp. 2d 137, 145 (D.D.C. 2013); see, e.g.

United States v. Claybourne, 509 F.2d 473, 479 (D.C. Cir. 1974) ("The decision whether to

cross-examine a witness is peculiarly one for defense counsel and his judgment should be

entitled to great respect by the court.").  During petitioner's trial, defense counsel conducted a

targeted cross-examination of Ms. Hudson during which Ms. Hudson admitted that she did not

know what had transpired between petitioner and Mohammed immediately before the shooting

(see May 6, 2008 Tr. at 248:24-249:19).  This called into question her prior testimony that

Mohammed had not threatened petitioner in any way.  Defense counsel was no doubt aware that

any additional cross examination risked eliciting testimony regarding her fear of testifying

against petitioner, which counsel had already successfully moved to limit during pretrial

proceedings.  See  Pet.'s Mem., Ex. K, Superior Court of the District of Columbia Docket Sheet,

April 21, 2008 entry (hereinafter "Superior Court Docket").  Defense counsel objected to

testimony regarding witness fear during Ms. Hudson's direct examination, and during his direct

appeal, petitioner challenged the trial court's ruling admitting the same testimony.  See Mem.

Op. at 6 (rejecting petitioner's claim that the trial court erred in allowing Ms. Hudson to testify

"that she provided inconsistent statements and withheld truthful information from the police

because she generally feared for her safety while [petitioner] was out of jail").

Petitioner's counsel therefore had good reason not to question Ms. Hudson on the

recommendation letter for admission to law school and the housing assistance provided by the

government.  Questioning Ms. Hudson about the recommendation letter would have bolstered her credibility and made her look smart and competent in front of the jury.  Similarly, questioning Ms. Hudson about the housing assistance would have risked eliciting testimony about the reason for the housing assistance, her fear for her safety after deciding to testify against petitioner, a subject that defense counsel wisely sought to avoid.

Further, though Ms. Hudson was an important witness, her testimony was not critical to petitioner's self-defense claim.  As the Court of Appeals noted, "only McCoy and Mohammed actually observed what transpired before the first shot was fired," Mem. Op. at 5, and the "government presented <u>substantial evidence</u> at trial refuting McCoy's claim of self-defense," <u>id.</u> at 4 (emphasis added).  That evidence included that petitioner "fired no less than five well-placed rounds into Mohammed at close range – one directly into his left temple – after knowingly venturing into Mohammed's neighborhood while armed."  <u>Id.</u>  Evidence presented at petitioner's trial also showed that petitioner approached "Mohammed's vehicle from the rear," thus taking him by surprise.  <u>Id.</u> at 7 n.7.  Petitioner admitted on the stand that Mohammed "did not pull a gun" out before petitioner shot him (May 7, 2008 Tr. at 392:3).  Under these circumstances, petitioner's self-defense claim necessarily failed and it is not clear how further impeaching Ms. Hudson about the recommendation letter or housing assistance would have made petitioner's self-defense argument more likely to succeed.  It is well established in the District of Columbia that self-defense is not available to a defendant who was the first aggressor, or who provoked the conflict.  <u>See</u> <u>Rorie v. United States</u>, 882 A.2d 763, 772 (D.C. 2005); <u>Sams v. United States</u>, 721 A.2d 945, 953 (D.C. 1998) ("Self-defense is not available to a defendant who deliberately puts himself in a position where he has reason to believe that his presence will provoke trouble, even if his purpose in putting himself in that position was benign.") (internal citations omitted).

Accordingly, petitioner's claim that his trial counsel was ineffective for failing to adequately cross-examine Ms. Hudson lacks merit.

3.  Failure to Call Witness

As a third basis for ineffective assistance, petitioner claims that trial counsel was ineffective because he did not call Nicole Jones, who was the victim's girlfriend, as a witness during the trial.  Ms. Jones gave a statement to Mark Hansen, an investigator at the District of Columbia Public Defender Service, on April 13, 2007.  See Pet.'s Mem., Ex. I, April 13, 2007 Statement of Nicole Jones (hereinafter "Jones' Statement").[4]  Ms. Jones stated during her interview that Mohammed was dangerous and had access to firearms.  Pet. Mem. at 29.  She also detailed violent episodes during which Mohammed physically and emotionally abused her.  Id. According to petitioner, Jones' testimony could have provided crucial background about Mohammed's propensity for violence, which would have bolstered his theory of self-defense. Id. at 30-31.  However, petitioner was not prejudiced by his counsel's failure to call Nicole Jones, and this Court should deny his ineffective assistance claim.

First, petitioner cannot show that his trial counsel's decision not to call Nicole Jones as a defense witness was deficient.  The decision to call a witness is a tactical decision that involves the particular circumstances of the moment.  See United States v. Henry, 821 F. Supp. 2d 249, 254 (D.D.C. 2011) (citing Gonzalez v. United States, 553 U.S. 242, 250 (2008)).  In her statement, Ms. Jones explains that Mohammed was violent and that he was known to carry a gun.  She also details an encounter with Mohammad during which he was physically and

---

[4] The document attached to petitioner's motion, which is purportedly a statement given by Nicole Jones to Mark Hansen, seems to be a (loose) transcription of a statement given by Ms. Jones.  The first page appears to be signed by Ms. Jones.

verbally abusive, which allegedly occurred in May or June 2005.[5]  Jones' Statement at 4-6.  In

her statement, Ms. Jones also provides details about her testimony to the grand jury in 2005.  Ms.

Jones states that she explained to the grand jury that she had known Mohammed since he was 12,

and that she knew of petitioner.  Id. at 6.  She described to the grand jury a conversation during

which she overheard petitioner state that "he was gonna smash him like I smashed Super Dave."

Id.  Ms. Jones explained to the grand jury that "smashed" meant to kill.  Id.  She further states

that when she came to Court on April 13, 2007, "she saw the guy who is charged with Imtiaz's

murder is nobody I know.  I have never seen him before.  I thought Raymond was my

complexion, had a nappy bush and was fat.  That is the guy I told Miss Sines in the grand jury

that smashed Super Dave."[6]  Id. at 6-7.  Ms. Jones concluded by stating that she was not present

when Mohammed was shot and did not know who shot him.  Id. at 7.

     The government believes that Ms. Jones' references to "Super Dave" are to Superior

Court Case No. 1998 FEL 723.  On May 7, 1998, petitioner was indicted by a grand jury in the

District of Columbia for a murder allegedly committed on January 28, 1998.  Petitioner was

charged with first degree murder while armed; armed robbery; possession of a firearm during a

crime of violence; and carrying a pistol without a license.  The case was eventually dismissed for

want of prosecution on July 16, 1998 because a witness failed to appear for trial.  Amit Mehta,

one of petitioner's attorneys, also references the "Super Dave murder" in an email to Christopher

McKee, dated June 5, 2007, in which Mehta describes a plea offer made by the government.  See

Pet.'s Mem., Ex. F, June 5, 2007 Email.

     Given the inconsistencies in Ms. Jones' statement, and the fact that she was recanting her

---

[5] It is unclear whether this is an error in note-taking or whether Ms. Jones erred in describing the incident as
Mohammed was killed on October 28, 2004.

[6] According to the docket sheet, there was a status hearing on April 13, 2007.  See Superior Court Docket, April 13,
2007 entry.

grand jury testimony while referring to a murder for which petitioner had been charged, and which both the government and defense knew about, it was entirely reasonable for trial counsel to decide not to call Ms. Jones.  Though petitioner asserts that Ms. Jones' testimony would have been helpful to his defense, and that "her credibility could not be questioned," Pet.'s Mem. at 30, that assertion is clearly belied by Ms. Jones' own statement.  That statement contains several references to another murder for which petitioner was indicted, and which was only dismissed because a government witness failed to appear for trial.  Further, Ms. Jones' statement contradicts her grand jury testimony.  Under these circumstances, petitioner simply cannot show any prejudice from his counsel's completely reasonable decision not to call Ms. Jones.  Indeed, he likely would have suffered prejudice if his counsel had called Ms. Jones.

The remaining portions of Ms. Jones' statement, which purportedly would have been part of her expected testimony, were cumulative of petitioner's own testimony that Mohammed was violent, frequently carried a gun, and was suspected of killing his own brother.  Even without Ms. Jones' testimony, defense counsel was able to argue to the jury that Mohammed was a dangerous "drug dealer," who "carried a gun," had a "reputation for violence," "had shot somebody over a basketball game," and was implicated in "the death of . . . his own brother" (May 13, 2008 Tr. at 5:24-6:7).  In addition, Ode Hawkins, a witness for the government, testified that he had seen Mohammed with a gun "[m]ore than once," and that Mohammed was a drug dealer (May 5, 2008 Tr. at 86:18-88:2).  The government's own evidence showed that Mohammed was armed at the time he was killed (see May 2, 2008 Tr. at 178:15-24; Mem. Op. at 2).  Given all of the evidence of Mohammed's violent disposition presented at trial by both the government and the defense, the impact of Ms. Jones' expected testimony regarding Mohammed's violent disposition would likely have been outweighed by the inconsistencies in

her testimony as well as her references to the "Super Dave" murder.  Moreover, regardless of the

information Ms. Jones could have provided about Mohammed's character, she could not have

testified to the relevant question regarding petitioner's self-defense claim:  whether Mohammed

threatened petitioner with death or serious bodily injury at the time of the murder.

Thus, trial counsel was not ineffective for failing to call Ms. Jones.  To make the required

showing under Strickland that particular testimony would affect the outcome of the trial, "a

petitioner ordinarily must show . . . that the testimony of uncalled witnesses would have been

favorable."  Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990) (internal citations and

quotation marks omitted).  Petitioner cannot make that showing; therefore, his ineffective

assistance of counsel claim based on a failure to call Ms. Jones must necessarily fail.

4.      Failure to Advise During Plea Negotiations[7]

Finally, Petitioner argues that McKee and Mehta were ineffective during the pretrial

stage because they failed to properly advise petitioner of the consequences of rejecting a

proposed plea offer.  Pet.'s Mem. at 20.  According to petitioner, the government extended a plea

offer on June 5, 2007, pursuant to which he would plead guilty to voluntary manslaughter in

exchange for a sentence of 15 years incarceration.  Petitioner argues that his attorney advised

him against taking the plea based on a "belief that the case would be resolved in pre-trial

proceedings."[8]  Id. at 20.  At the time the plea offer was extended, petitioner was already serving

a 25-year sentence for an unrelated murder.  Petitioner asserts that if he had known of the

potential sentence following a trial, he would have accepted the June 2007 plea offer.  Id.  In

support of his claim, petitioner has attached an email from Mehta to McKee that describes the

---

[7] Petitioner did not include this claim in his motion to recall the mandate in the District of Columbia Court of Appeals.

[8] Petitioner does not specify which attorney.

proposed plea offer.  See Id., Ex. F.

Where a petitioner argues that trial counsel's ineffective assistance led to the rejection of

a plea offer, he must show that:

> but for the ineffective advice of counsel there is a reasonable probability that the
> plea offer would have been presented to the court (i.e., that the defendant would
> have accepted the plea and the prosecution would not have withdrawn it in light
> of intervening circumstances), that the court would have accepted its terms, and
> that the conviction or sentence, or both, under the offer's terms would have been
> less severe than under the judgment and sentence that were in fact imposed.

Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012).  A petitioner can make this showing with a

sworn affidavit or other testimony stating that he would have accepted the plea but for counsel's

deficient representation and some objective evidence supporting his claim.  United States v.

Gordon, 156 F.3d 376, 381 (2d Cir. 1998).  While a disparity between the sentence offered and

the sentence imposed can be sufficient objective evidence in certain cases, "the district court

must still find the [petitioner's] evidence to the effect that he would have made a different

decision but for counsel's advice to be credible."  United States v. Frederick, 526 Fed. App'x 91,

93 (2d Cir. 2013).  In the context of a plea agreement, bad advice alone is insufficient to prove

the deficient performance required for constitutionally ineffective assistance of counsel.  See

Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997) ("For counsel's [decision] to rise to the

level of constitutional ineffectiveness, the decision . . . must have been completely unreasonable,

not merely wrong, so that it bears no relationship to a possible defense strategy.").

Petitioner's arguments regarding his counsel's ineffective assistance with respect to his

plea are patently incredible.  The record reflects that petitioner had excellent counsel, who

zealously represented him before and during his trial.  Indeed, though petitioner has now tried to

raise ineffective assistance of trial counsel on two previous occasions – direct appeal and a Rule

41 motion to recall the mandate – he is raising his claim regarding ineffective assistance during

plea negotiations for the first time in his Section 2254 motion.  Petitioner has an extensive criminal history, including two prior murder charges, one to which he pleaded guilty in 2006. See Superior Court Case No. 2005 FEL 3464.  He has been arrested or charged on 14 separate occasions.  See Govt.'s Ex. A, Excerpts from Presentence Report Case No. 2005 FEL 3995. Petitioner's arguments regarding the June 2007 plea offer thus require a suspension of logic – that a person with as much contact with the criminal justice system as petitioner had previously experienced did not understand the difference between manslaughter and first degree murder while armed, or that a pre-trial plea would have favorable implications for sentencing, simply defies reason.  Indeed, the only possible conclusion to draw from the fact that petitioner did not accept the June 2007 plea is that he made a strategic decision, with the benefit of counsel's advice, to go to trial.  The fact that that decision ultimately resulted in a more substantial sentence does not render counsel's representation ineffective.  Indeed, as the Supreme Court has recognized, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."  Lafler, 132 S. Ct. at 1391.

Under these circumstances, petitioner cannot establish that his trial counsel was constitutionally deficient.  Other than his own self-serving statements that he would have accepted the plea (statements that essentially ask this Court to ignore petitioner's lengthy history of contact with the criminal justice system), petitioner has provided no objective evidence to support his claim.  Petitioner has not demonstrated that counsel's advice regarding the plea offer was completely unreasonable or that it bore no relation to reasonable trial strategy, nor does petitioner allege that counsel precluded him from accepted the plea offer, or that counsel did not communicate the offer to him.  Petitioner has also not alleged that it was not ultimately his decision to reject the plea offer and go to trial.  Significantly, throughout the trial and post-trial

proceedings, petitioner has steadfastly maintained that he killed Mohammed in self-defense.

Thus, petitioner cannot establish that his counsel's advice fell below any objective standard of

reasonableness and must therefore be dismissed.[9]  See United States v. Patterson, 525 Fed.

App'x 681, 685-686 (10th Cir. 2013) (finding that a petitioner had failed to demonstrate that his

counsel was ineffective for advising against taking a plea offer under circumstances similar to

those presented here because even if "counsel overestimated the strength of [petitioner's] case,

[he] has still not demonstrated that counsel's advice fell below an objective[] standard of

reasonableness"); Berry v. United States, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012), appeal

dismissed, 490 F. App'x 583 (4th Cir. 2013) (holding that where petitioner had not alleged that

his counsel failed to communicate a plea offer but rather that the alleged error was bad advice in

counseling him to proceed to trial, counsel was not ineffective where there was nothing in the

record to suggest that petitioner intended to plead guilty, especially because petitioner

maintained his innocence throughout the proceedings); United States v. Gordon, No. 06-206,

2013 U.S. Dist. LEXIS 43091, at *25-*26 (W.D. Pa. 2013) (same).

### B.      Ineffective Assistance of Appellate Counsel

Petitioner also claims that his appellate counsel was ineffective for failure to file a

Section 23-110 motion claiming ineffective assistance of trial counsel in the District of Columbia

Superior Court during the pendency of his direct appeal, instead raising some of petitioner's

ineffective assistance claims in the direct appeal itself.  Pet.'s Mem. at 4.  In order to prevail on

his claim, petitioner must establish that any Section 23-110 motion that his appellate counsel

---

[9] The record also establishes that petitioner received zealous representation before and during trial.  Counsel filed numerous pretrial motions, including:  two motions for sanctions against the government on the basis of evidence that was purportedly withheld by prosecutors, see Superior Court Docket, October 25, 2007 and April 18, 2008 entries; a motion to suppress statements, tangible evidence, and statements and identification testimony, id. September 7, 2006 entry; and a motion in limine to prelude evidence of alleged witness fear, id. April 21, 2008 entry.  These motions and petitioner's theory of self-defense at trial are consistent with a conclusion that petitioner and counsel made a strategic decision to go to trial.

failed to file would have been meritorious.  Because petitioner cannot do so, <u>see</u> Section II.A <u>supra</u>, his ineffective assistance of appellate counsel claim must be dismissed.

A District of Columbia prisoner may bring a claim of ineffective assistance of appellate counsel in federal court because Section 23-110(g) does not bar habeas petitions on that basis if the petitioner has exhausted his state remedies by filing a motion to recall the mandate in the District of Columbia Court of Appeals.  <u>See</u> <u>Williams v. Martinez</u>, 586 F.3d 995, 998-999 (D.C. Cir. 2009) (holding that the district court could review a "federal habeas petition asserting ineffective assistance of appellate counsel after [the petitioner has] moved recall the mandate in the D.C. Court of Appeals" because such a claim is not available via a Section 23-110 motion). Here, petitioner did file a motion to recall the mandate, in which he alleged that his appellate counsel was ineffective for failing to file a Section 23-110 motion on the basis of trial counsel's failure to object to statements made by the prosecution during closing and rebuttal; failure to move for a mistrial; failure to properly impeach Ms. Hudson; and failure to call Nicole Jones as a witness.  <u>See</u> Pet.'s Mem., Ex. J.  Petitioner did not raise his claim regarding appellate counsel's failure to file a Section 23-110 motion on the basis of trial counsel's failure to properly advise him of the consequences of not accepting a guilty plea; therefore, petitioner has not exhausted his state remedies with respect to that claim.

In order to prevail on a claim of ineffective assistance of appellate counsel, petitioner must show, first, "that his counsel was objectively unreasonable . . . that is, that counsel unreasonably failed to discover non[-]frivolous issues and to file a merits brief raising them," and second, that he suffered prejudice as a result, "[t]hat is, . . . a reasonable probability that, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000).  Petitioner cannot do that here.  In its per curium Order

denying petitioner's motion to recall the mandate on the merits, the Court of Appeals noted that "counsel's decision to not file a D.C. Code § 23-110 motion will be considered ineffective assistance only if the filing of such a motion would have been meritorious," and explained that "many of the issues raised in appellant's motion fall within the purview of tactical decisions and, without a showing of prejudice that we find has not been established in this case, do not provide a basis for establishing ineffective assistance of trial counsel."  Sept. 9, 2013 Order.

When reviewing the judgment of a state court pursuant to 28 U.S.C. § 2254, a district court must employ a deferential standard of review.  Section 2254(d) provides that:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, this Court may grant habeas relief with respect to petitioner's claim of ineffective assistance of appellate counsel only if the Court of Appeals' denial of petitioner's Rule 41 motion to recall the mandate "was contrary to federal law then clearly established in the holdings of [the Supreme] Court; or that it involved an unreasonable application of such law; or that it was based on an unreasonable determination of the facts in light of the record before the state court."  Harrington v. Richtor, 131 S. Ct. 770, 785 (2011) (internal citations and quotation marks omitted).

Here, petitioner cannot meet this standard.  The Court of Appeals denied his motion to recall the mandate on the merits because petitioner failed to show that he was prejudiced by any

of trial counsel's alleged failures.  Furthermore, for the reasons stated in Section II.A <u>supra</u>, all of petitioner's ineffective assistance of trial counsel claims lack merit.  In his habeas petition, petitioner does not address how the Court of Appeals' decision was contrary to federal law, involved an unreasonable application of federal law, or was based on an unreasonable determination of the facts.  Indeed, he says nothing about the Court of Appeals' decision other than to note that his motion to recall the mandate was denied.  <u>See</u> Pet.'s Mem. at 4-5.  Further, like Section 23-110, the remedy offered by a Rule 41 motion to recall the mandate is not inadequate or ineffective simply because petitioner's attempt to avail himself of it was unsuccessful.  <u>See</u> <u>Garris v. Lindsay</u>, 794 F.2d 722, 727 (D.C. Cir. 1986) (holding, in the Section 23-110 context, that "[i]t is the inefficacy of the remedy, not a personal inability to utilize it, that is determinative").  Accordingly, petitioner's ineffective assistance of appellate counsel claim should be denied as well.

## III.    Conclusion

For the reasons stated above, the Court should summarily deny petitioner's <u>pro se</u> petition pursuant to 28 U.S.C. § 2254 for writ of habeas corpus.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney
D.C. Bar Number 447-889

LESLIE ANN GERARDO
Chief, Special Proceedings Division
D.C. Bar Number 419-823


SONALI D. PATEL
Assistant United States Attorney
Special Proceedings Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7032
sonali.patel@usdoj.gov

25

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion has been served via first class U.S. Mail, postage prepaid, on this 28th day of October, 2014, to:

Raymond T. McCoy
Reg. Number 03339-007
United States Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

                                   Sonali D. Patel
                                   Assistant United States Attorney